ROBERT T. HENIN *v.* GAY K. HENIN
(9660)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued October 2, 1991—decision released January 14, 1992

*James H. Howard,* for the appellant-appellee (defendant).

*David F. Sherwood,* for the appellee-appellant (plaintiff).

*Barbara J. Ruhe,* for the minor children.

DUPONT, C. J. This is an appeal from a judgment rendered in a dissolution of marriage action. The issues are whether the trial court's allegedly improper conclusion regarding the cause of the breakdown of the marriage adversely affected the financial awards and whether the trial court abused its discretion in awarding the defendant time limited alimony. The plaintiff's cross appeal questions whether the trial court's order requiring payment to the defendant of a promissory note upon the plaintiff's remarriage violates the plaintiff's fundamental constitutional right to marry.

The parties were married in August of 1969 and have four minor children who ranged in age from four to sixteen at the time of the dissolution. The plaintiff was forty-three years old and a dentist with his own practice. The defendant was forty-one years old, with a

bachelor of fine arts degree in fashion merchandizing. She was not employed outside of the home for most of her married life and at the time of the dissolution was working as a supermarket bagger.

In 1983, the defendant's mental state began to deteriorate. She refused to seek psychiatric treatment despite the advice of pastoral and other counselors. The defendant's illness eventually resulted in two referrals in 1987 to the department of children and youth services about her behavior with the children.

In May, 1987, the plaintiff filed a complaint seeking a legal separation, later changing the relief sought to a dissolution of marriage. During the litigation, the plaintiff obtained a restraining order forcing the defendant to vacate the marital residence. Also, counsel for the children sought and received restraining orders preventing the defendant from exercising visitation with the minor children except under controlled conditions.

Prior to trial, the plaintiff's motion for a psychiatric examination of the defendant was granted. When the defendant failed to appear for the scheduled examination, she was held in contempt. A capias was issued and the defendant subsequently was examined and evaluated in compliance with the original court order. The defendant was diagnosed with chronic undifferentiated schizophrenia and was subsequently hospitalized at a psychiatric hospital for sixty days. During the course of the marital litigation, a guardian ad litem and conservator were appointed for the defendant.

The trial court dissolved the parties' marriage and awarded custody of the minor children to the plaintiff with limited visitation rights provided to the defendant. The court ordered the defendant to convey her one-half interest in the marital residence to the plaintiff and ordered him to execute a $100,000 mortgage deed

and note to her, bearing 7 percent simple interest, payable at such time as the children no longer used the home as a residence, upon the plaintiff's death or remarriage, or on April 18, 2004, whichever occurs first. The majority of the parties' other assets was awarded to the plaintiff. The defendant was awarded $400 per week in periodic alimony to terminate upon the earliest of her death, remarriage, or April 12, 2004.[1] Periodic alimony was made nonmodifiable as to its thirteen year duration. That term was timed to coincide with the maturation of the mortgage note. The plaintiff was also ordered to continue providing health insurance coverage for the defendant for a three year period. In addition, he was ordered to maintain a declining balance term life insurance policy in the original amount of $200,000 for the benefit of the defendant for the period during which he is obligated to pay alimony. Finally, the plaintiff was ordered to pay a portion of the defendant's counsel fees, guardian ad litem's fees, and a portion of the children's guardian ad litem's fees.

The defendant contests the trial court's finding that the breakdown of the marriage was caused by her failure to seek medical treatment and her consequent behavior, claiming that the finding adversely affected the financial awards.

General Statutes §§ 46b-81 (c) and 46b-82 require the trial court to consider several factors in crafting its financial orders, including the cause for the dissolution. The defendant argues that our decision in *Roach* v. *Roach,* 20 Conn. App. 500, 507, 568 A.2d 1037 (1990), would here preclude the trial court from finding that behavior caused by mental illness can be the cause of a marital dissolution and further argues that, even if

---

[1] We note the six day difference between the date the alimony terminates and the date the mortgage note becomes payable. That difference is irrelevant, however, to this appeal.

such a finding were permissible, the testimony did not support the trial court's conclusion.

In *Roach* v. *Roach,* supra, we held that the demeanor of a party while testifying during a dissolution action cannot be converted into the cause of a breakdown of the marriage. Of necessity, the cause of a dissolution must already have occurred prior to trial. The facts of *Roach* v. *Roach,* supra, are dissimilar to the present case. The trial court's finding here was that the breakdown of the marriage was caused by the defendant's failure to seek medical treatment. That finding was based on testimony relating to the defendant's condition and behavior from 1983 to the time of trial, and was unrelated to the defendant's mental condition as it manifested itself during trial.

In *Breen* v. *Breen,* 18 Conn. App. 166, 167–68, 557 A.2d 140 (1989), we declined to disturb the trial court's finding that the plaintiff's failure to attempt reconciliation was a major factor in the breakdown of the marriage. *Sunbury* v. *Sunbury,* 13 Conn. App. 651, 538 A.2d 1082 (1988), rev'd on other grounds, 210 Conn. 170, 553 A.2d 612 (1989), upheld the trial court's finding that a party who had suffered emotional trauma as a result of a child's death and had thereafter increased her alcohol consumption and become abusive was more at fault in the marital breakup than her husband. A finding that a party's health problem, such as alcoholism, was the precipitating cause of a breakdown of a marriage need not be disturbed, although the "voluntary" resumption of the use of alcohol cannot be the basis of the termination of a periodic alimony award. *McPhee* v. *McPhee,* 186 Conn. 167, 176–77, 440 A.2d 274 (1982). The teaching of *Breen, Sunbury* and *McPhee* is that a trial court enjoys a wide latitude in the type of finding it may make as to the cause of the dissolution. We conclude, therefore, that a trial court

may find that a party's mental condition and consequent behavior was the cause of a marital dissolution.

We must next determine whether the defendant correctly argues that the evidence at trial did not support the court's finding. For this court to conclude that the trial court abused its discretion, we must determine that the trial court could not reasonably conclude as it did. *Sweet* v. *Sweet,* 190 Conn. 657, 664, 462 A.2d 1031 (1983); *Trivelli* v. *Trivelli,* 5 Conn. App. 488, 490, 500 A.2d 244 (1985). Having reviewed the record and the evidence in this case, we find ample support for the court's conclusion that the defendant's illness and refusal to seek treatment caused the breakdown. We further conclude, on the basis of the record, that the court's finding about the cause of the breakdown did not improperly infect the financial awards.

The defendant next contests the trial court's order that terminates the periodic alimony award on April 12, 2004. The defendant contends that the trial court abused its discretion because it failed to articulate a reason for the time limitation of its award and because there was insufficient evidence on the record to demonstrate that the defendant could become self-sufficient within that time.

The issue of time limited alimony has been considered by this court in a number of cases. See *Watson* v. *Watson,* 20 Conn. App. 551, 568 A.2d 1044 (1990); *Sunbury* v. *Sunbury,* supra; *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); *Louney* v. *Louney,* 13 Conn. App. 270, 535 A.2d 1318 (1988); *Markarian* v. *Markarian,* 2 Conn. App. 14, 475 A.2d 337 (1984). In each of these cases, we stated that one purpose of limiting the duration of an alimony award is to provide an incentive for the spouse receiving support to use diligence in procur-

ing training or skills necessary to attain self-sufficiency. See *Markarian* v. *Markarian,* supra, 16.

In these cases, we reviewed whether there was sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. *O'Neill* v. *O'Neill,* supra.

In the present case, the defendant has a college degree, but did not work outside the home for most of her married life. There is no evidence in the record concerning her future earning potential if she seeks treatment for her mental illness. Expert testimony indicated that she would be unable, given her mental condition at the time of the dissolution, to find employment consistent with her education and previous experience.[2] There was no finding by the trial court, or evidence from which the court could make a finding, regarding the time required for the defendant to recover from her mental illness, assuming she accepted treatment. Thus, the thirteen year duration of the periodic alimony award is arbitrary if analyzed only in terms of the time necessary for the defendant's economic rehabilitation.

In *Roach* v. *Roach,* supra, 506, however, we recognized that "[a]lthough time limited alimony awards are usually rehabilitative in purpose, there may be other

---

[2] The testimony was as follows:

"Q. You also understand that she had a college degree and previously worked in fashion with Macy's. Did you have that information?

"A. Yes.

"Q. Do you feel that she would have difficulty in holding, given your knowledge of her illness, in holding that type of employment, as opposed to being a bagger or doing some other kind of menial job?

"A. Insofar as schizophrenia causes diminished concentration, confused thinking, especially under stress, and inability at times to perceive reality, I would believe so."

valid reasons for awarding such alimony." Another valid purpose for time limited alimony is to provide interim support until a future event, such as a bond maturation, trust disbursement, or mortgage maturation, takes place. Such a purpose exists in the present case.

The trial court's financial orders must be considered as a cohesive unit. *Brash* v. *Brash,* 20 Conn. App. 609, 569 A.2d 44 (1990). The periodic alimony award here is nonmodifiable as to duration. Six days after its end, on April 18, 2004, the parties' youngest child will reach his majority and the $100,000 mortgage note and its accrued interest will become payable. The trial court stated that the intent of the latter order was to provide a lump sum that, if reasonably invested, would generate income for the rest of the defendant's life equivalent to that provided by the terminated alimony order. The maturation of the mortgage coincides with the termination of the periodic alimony award, and, therefore, the particular duration of the award has a rational basis. The time limited periodic alimony, therefore, was proper.

The defendant also claims that there can be no time limited alimony award in this case because General Statutes § 46b-85 requires an order of indefinite length for the support of the defendant, who is a mentally ill spouse. This section provides in pertinent part: "At the time of granting dissolution of a marriage to which one party is mentally ill or at any time thereafter, on application of either party or of the guardian or conservator of the mentally ill spouse, or of any person . . . charged with the support of the mentally ill spouse . . . the court may make such order requiring support of the mentally ill spouse, or security for support, as may be proper." The trial court did not order any supplemental support pursuant to § 46b-85, nor was any application pursuant to § 46b-85 made by anyone.

We have previously analyzed this section and its relationship to General Statutes § 46b-82 to determine "which statute should be used to provide support for a mentally ill spouse who is not cared for by another, either physically or by management of financial affairs." *Roach* v. *Roach,* supra, 512. Although a guardian ad litem and conservator were appointed for the defendant, this fiduciary did not seek contribution from the plaintiff for support of the defendant. The support award to the defendant was properly made pursuant to § 46b-82 because no one requested support under § 46b-85 and the defendant cannot be the recipient of payments under both statutes. *Roach* v. *Roach,* supra, 511. There was no requirement in this case for the trial court to issue an order of indefinite duration pursuant to § 46b-85.

The plaintiff, in his cross appeal, alleges that the trial court abused its discretion in requiring payment of the mortgage upon his remarriage. He argues that while a woman generally improves her family's income by marrying, a man generally diminishes his family's income by marrying, unless he marries a woman with income. He argues, therefore, that the court's order infringes on his claimed constitutional right to marry a spouse who does not produce income, although he cites no authority to support this proposition. There is no such right.

Moreover, it is not unusual or impermissible for a trial court to award a husband's interest in the marital home to the wife subject to a lien in favor of the husband to be repaid upon her death or remarriage. See, e.g., *Hollingsworth* v. *Hollingsworth,* 180 Conn. 212, 429 A.2d 463 (1980); *Graham* v. *Graham,* 25 Conn. App. 41, 592 A.2d 424 (1991). An order conditioning the payment of the mortgage upon the wife's death, remarriage or cohabitation with an unrelated male is valid. *Graham*

v. *Graham,* supra. There is nothing irrational or unconstitutional about a converse award. We find absolutely no merit in the plaintiff's argument.

The judgment is affirmed.

In this opinion the other judges concurred.