[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 42, has brought this action seeking a dissolution of the marriage to the defendant husband, 43 which took place at St. Joseph, Missouri on December 29, 1978. There are three children issue of the marriage: Heather born March 3, 1983, Holly born November 29, 1985 and Hilary born May 26, 1988. The allegations of the complaint are all found to be proven and true.
The parties' final separation occurred in August 1997. Heather resides with her father while the two younger children reside with their mother.
The plaintiff has been, since 1987, a homemaker during the marriage. The plaintiff has a college degree in journalism and, in 1982 was awarded an R.N. by St. Luke's Hospital. The plaintiff has decided not to return to nursing and is applying to a local university for a master's degree in education, which is a two year program. The defendant enjoyed a successful career in advertising until March 10, 1998 when his services were terminated by his employer via a written release wherein he received a continuation of his salary for eight weeks (Defendant's Exhibit #5). Thereafter, he was an independent CT Page 16741 contractor, sometimes utilizing his d/b/a known as The Observatory (Defendant's Exhibit #6). He continued his medical plan and dental plan for the family at a monthly premium of $673.
The parties' trial commenced on September 14, 1999 at which time they submitted a written stipulation setting forth their various agreements on many issues. The court accepted the stipulation which was filed as computer document #129. During the plaintiff's testimony she stated that she agreed to a modification of "Article III, 1. Property Distribution" so that the parties would share 50/50 for mortgage installment, taxes and the profit sharing loan installments. The parties agreed to immediately place the marital home on the market for sale. If the house was not sold after four months or if alimony and/or child support is awarded for such four month period, quoting from Article VI Unresolved Issues, the 50/50 agreement would cease.
The court must consider the causes of the breakdown of the marriage. The plaintiff attributes the breakdown to the defendant's affaire de coeur in 1997 with a co-worker. The defendant admits the dailliance, but defended his actions, saying the marriage was already very bad.
The defendant's affidavit lists yearly gross income as $315,000 and net monthly income after business expenses of $14,840 or net weekly of $3,450. Since it exceeds $2,500 monthly the child support order is on a "case-by-case basis", Section46b-215a-2a(a)(2) Connecticut Child Support and Arrearage Guidelines.
Also in dispute is the amount and term of the periodic alimony order. The plaintiff had worked until 1987. She has plans to undertake a new career as a teacher. This case lends itself to time limited periodic alimony, Ippolito v. Ippolito,28 Conn. App. 745 (1992).
The plaintiff has been using a leased motor vehicle. The lease has expired. The plaintiff seeks an allowance to match the defendant's 1988 Jeep Grand Wagoneer that he values at $10,000.
The plaintiff seeks an allowance to prosecute since she is indebted on two notes totaling $17,500, (Plaintiff's Exhibit E and F), is indebted to her former lawyers for $13,306.17, (Plaintiff's Exhibit D) and is indebted to her present lawyer for $14,476.07 (Plaintiff's Exhibit M). CT Page 16742
The defendant created a Charles Schwab account #8519-9923 in his name with statements sent to his office (Plaintiff's Exhibit C). The defendant claims it is a college fund but there is no agreement with the plaintiff nor do the children have any legal interest. It is not a college fund.
The defendant filed a joint income tax return without the plaintiff's signature. This could create a problem in the future. The defendant will have to hold the plaintiff harmless.
The defendant advanced the argument that since the defendant is now self-employed making less money than he had been while employed, that this case is an "earning capacity" case. The court does not agree and finds that the defendant is not underutilizing his skills, Miller v. Miller, 181 Conn. 610, 611-613 (1980).
Both parties are in good health. Having reviewed the evidence in light of the statutory criteria and relevant case law the court enters the following decree:
1. Judgment is rendered dissolving the marriage on the ground alleged in the complaint of irretrievable breakdown and as stipulated in writing by the parties (#127). As part of the judgment the following orders are entered.
2. The parties' stipulation (#129) is found to be fair and equitable and is approved, the various agreements are adopted as orders by this court with the one change mentioned supra, copy attached.
3. The parties shall continue to pay the mortgage installments, taxes and the profit sharing loan installments on a 50/50 basis until closing of title.
4. The defendant shall pay $3,000 per month to the plaintiff as child support.
5. The defendant shall pay $5,000 per month as periodic alimony until the expiration of seven years or until the sooner death of either party, the sooner marriage of the plaintiff or upon the sooner application of § 46b-86 to this order. The term of the alimony order is non-modifiable in that it shall not be extended under any circumstances. CT Page 16743
6. From the defendant's share of the net proceeds of the sale of the marital home the defendant shall pay $10,000 to the plaintiff to equalize the division of assets, the imbalance having been caused by the plaintiff's owning no motor vehicle.
7. From the defendant's share of the net proceeds of the sale of the marital home the defendant shall pay $15,000 to the plaintiff as an allowance to prosecute.
8. The parties shall divide all other assets 50/50. The court retains jurisdiction for execution of any needed QDRO.
9. The plaintiff's birth name Wade is restored to her.
10. All remaining liabilities shall be the responsibility of the party in whose name the debt stands holding the other party harmless and indemnified.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.
 STIPULATION
The parties, represented by their attorneys, hereby stipulate as follows:
That the Court will determine the undecided issues taking into consideration those Articles below which contain agreements of the parties and the parties agree that the Court will take into consideration these terms and agreements but not modify them when it decides the undecided issues.
 ARTICLE I. DIVORCE
The parties shall obtain an undefended divorce on the grounds of irretrievable breakdown of the marriage.
 ARTICLE II. CUSTODY AND VISITATION
CT Page 16744
1. The parties shall have joint legal custody of their three children, to wit: Heather, born March 3, 1983; Holly, born November 29, 1985; and Hilary, born May 26, 1988. The wife shall have primary physical custody of the younger two children and the husband shall have primary physical custody of the eldest child.
2. Visitation time between the parents and the children shall be as follows:
a. The husband shall have all children on Mondays for dinner until 8:30 p. m. The weekday the husband will have dinner with the children may be changed from time to time depending on the children's activities, based on mutual agreement between the parties.
b. The Husband shall have the children on alternating weekends commencing Friday at 6:00 p. m. and ending Sunday at 8:30 p. m.
c. The wife shall have all three children from after school on Tuesday until she drops them off at the bus on Wednesday morning.
d. The wife shall have the children on alternating weekends commencing after school on Friday until Sunday at 8:30 p. m.
e. The Thanksgiving holiday consisting of the period when school ends on Wednesday until Sunday at 8:30 p. m. of that week shall be alternated with the husband having such holiday in odd numbered years and the wife having the holiday in even numbered years.
f. The Christmas period shall be divided into two portions, with the first half of the vacation beginning from the day school lets out until December 26 at 10:00 a.m. and the second portion commencing 10:00 a.m. on December 26 until 8:30 p. m. the day before school recommences. The wife shall have the first half of such vacation in odd numbered years and the husband in the even numbered years and they shall alternate thereafter.
g. Easter Sunday shall be alternated each year with the husband having such period in even years and the wife in odd years. CT Page 16745
h. The spring break shall be alternated with the husband having such period in odd years and the wife in even years. Should spring break include Easter Sunday, then Easter Sunday will belong to the parent who has the spring recess.
i. Each parent will have one week for vacation with the children during the summer. The normal visitation schedule shall be in effect for the balance of the summer.
3. Each parent shall be entitled to all information and reports from any school, doctor, hospital or any other professional treating any of the children.
4. Each parent shall be entitled to attend all the children's school and similar activities.
5. The visiting parent is responsible for transporting the children.
 ARTICLE III. EQUITABLE DISTRIBUTION
1. Property Distribution
a. The marital residence located at 88 Fable Farm Road, New Canaan, Connecticut (the "Premises") shall immediately be placed on the market for sale. The parties shall agree on the offering price and acceptance price. If the parties do not agree on either the offering price or the acceptance price, then Erica Bergman, a mutually agreeable broker, shall determine the price. Each party will cooperate and execute all documents necessary to effectuate a sale to a bona fide purchaser at a sum equal to or greater than the acceptance price.
b. The wife shall retain exclusive possession of the Premises until the time of sale. She shall cooperate to ensure that brokers and potential purchasers will have reasonable access to the Premises..
c. The husband shall continue to make all mortgage and real property tax payments on the Premises until it is sold, but not for a period exceeding four (4) months. This clause does not restrict the court order under Article VIg below. CT Page 16746
d. The proceeds of sale shall be divided equally between the parties after deducting the mortgage, the profit sharing loan used to purchase the Premises, usual transfer taxes and fees and costs of sale, including reasonable attorney's fees, and any reasonable expenses related to the sale.
e. If the Premises is not sold at the initial offering and acceptance price, then sixty (60) days after the Premises are placed on the market, the parties shall consult with a view towards setting lower offering and acceptance prices. If the parties do not agree on such reductions, then the issue shall be determined by Erica Bergman. If the Premises is not sold sixty (60) days thereafter, then the parties shall again discuss this issue and seek to agree upon a lower offering and acceptance price. This issue shall, also, be determined by Erica Bergman in the absence of agreement of the parties.
f. The parties shall agree to all necessary repairs and fix-ups necessary to obtain the best sales price as recommended by the broker which will begin at once. Basement items (the finished basement room only) will be removed by the husband within 2 weeks. After two weeks wife may have any items left removed. Wife will give husband reasonable access including in the evening since the husband works.
g. The parties shall use from the Charles Schwab account up to $12,000 to fix up the marital residence for sale. Payments may be made by the attorneys only for agreed fix up and repair expenses to prepare the Premises for sale. These funds will be deducted from the sales proceeds and returned to the Schwab account if the Court determines the Charles Schwab account is a college fund.
2. The wife shall retain the grand piano and her jewelry. The husband shall retain his watch collection.
3. The husband shall immediately, on execution of this Stipulation, have the right to remove any of his personal papers, books, clothing and effects that may still be located in the Premises.
4. The balance of the tangible personal property in the marital residence shall be divided equitably by the parties, or in the absence of agreement, by the Court after the Family Relations Office mediates this issue with the parties. CT Page 16747
4a. Upon sale the husband will remove the personal property and furniture which per Article III he is awarded.
5. If any property interest which is owned by a party prior to the date of dissolution is not divulged and the non-titled party subsequently learns of the existence of such asset, then that asset shall be equally distributed between the parties at its fair market value as of the time of discovery. The party who failed to disclose such asset shall pay all reasonable attorney's fees incurred by the non-disclosing party in connection with the distribution of this asset.
6. Each party shall be responsible to pay and to hold the other harmless from and indemnified against any other debts or liabilities as listed in his or her financial affidavit to be submitted with the dissolution judgment. Notwithstanding, either party may file an application in this dissolution action for an award of attorney's fees incurred in this action.
7. The husband shall retain sole title to the automobile presently used by him.
8. The husband has two pensions: the Fallon McElligott Profit Sharing Plan and a Schwab Rollover 401-K Plan. These two plans shall be equally divided by the parties by a Qualified Domestic Relations Order to be executed together with the Judgment of Dissolution. The Profit Sharing Plan shall include the payback of the loan used to purchase the marital residence from the sale of the marital residence.
 ARTICLE IV. TAX ISSUES
1. The parties have heretofore filed joint income tax returns. The husband agrees to be responsible for any underpayment of tax, interest or penalties on such returns and to hold the wife harmless from and indemnified against any such liability.
2. Any refund derived from a joint tax return or credits for payments of taxes relevant thereto shall belong to the husband and the wife shall cooperate to effectuate such intent. CT Page 16748
3. Each party shall have one exemption in each year. The husband shall have the right to take two children as exemptions on his tax returns in odd numbered years and the wife in even numbered years. The parties will execute any documents necessary to effectuate this right. If the husband is not able to obtain any benefit from such exemptions under the Internal Revenue Code and related laws, then such exemption shall belong to the wife and the husband shall execute any documents necessary for her to claim such exemptions.
 ARTICLE V. INSURANCE
1. The husband shall maintain a life insurance policy with a death benefit of Two Hundred Thousand ($200,000) Dollars with the wife named as beneficiary so long as he continues to have alimony and/or child support obligations under this Stipulation. The husband shall pay the premiums and maintain such insurance in full force and effect. The wife shall have the right, once per year, to obtain confirmation from the husband and/or the company that the insurance is in effect and that she is the beneficiary thereof.
2. The husband shall maintain appropriate medical insurance for the children until their emancipation. Provided the wife takes the children to in-plan providers, the husband will pay the reasonable unreimbursed, non-elective medical expenses above the sum of $100 per year, per child. If there is a dispute, the Court will retain jurisdiction to determine this issue.
 ARTICLE VI. UNRESOLVED ISSUES
1. The parties agree that the following issues are not resolved by this Stipulation:
a. Child support and related issues;
b. Alimony.
c. Disposition of the Charles Schwab account.
d. Legal fees. CT Page 16749
e. Additional tax liability incurred by the Husband by reason of the wife's failure to execute joint income tax returns for the year 1997.
f. Value of husband's car or its equivalent.
g. (i) Payment of mortgage, real property taxes and profit sharing loan on marital residence after the 4-month period in Article III(1)(c) and (ii) payment of mortgage, real property taxes and profit sharing loan on the marital residence if the Court awards alimony and/or child support for such 4-month period.
 ARTICLE VII. MISCELLANEOUS PROVISIONS
1. Each party shall execute whatever documents may be necessary to effectuate the terms of this Stipulation.
2. This Stipulation shall be incorporated in the Judgment of Dissolution but shall not merge therein.
3. Each party has been represented by counsel of his or her choosing and acknowledges that this Stipulation has been entered into after full discussions with his or her attorneys.
4. This agreement may not be modified except in writing in a form consistent with the execution of this agreement.
5a. Each party hereby waives any right to share in the estate of the other including an elective share, right to take in intestacy, to serve as the executor/executrix of his or her Will or to share in any other way in the estate of the other.
5b. Each party hereby waives any provision presently existing in the Will of the other party.
6. Each party has had an opportunity to conduct full and fair disclosure of the other party. Each represents that appropriate disclosure has been made, including depositions of both parties and document production. The plaintiff will reclaim her birth name of Roxane Wade. CT Page 16750
IN WITNESS WHEREOF, the parties have executed five (5) copies of this Stipulation which may be So Ordered by the Court, each copy if which shall be deemed an original.
DATED: September 14, 1999
_________________________ __________________________ ROXANE L. STINGLEY ANTHONY A. PIAZZA
_________________________ __________________________ JOHN D. STINGLEY NORMAN S. HELLER TENZER GREENBLATT LLP
 ACKNOWLEDGMENT
STATE OF CONNECTICUT )) ss.: Stamford, Ct. COUNTY OF FAIRFIELD )
On the 14 day of September, 1999, before me the undersigned, personally appeared ROXANE L. STINGLEY, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.
 ____________________________________________ Notary Public/Commissioner of Superior Court
STATE OF CONNECTICUT )) ss.: Stamford COUNTY OF FAIRFIELD )
On the 14 day of September, 1999, before me the undersigned, personally appeared JOHN D. STINGLEY, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.
 ____________________________________________ Notary Public/Commissioner of Superior Court
CT Page 16751